UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :
HUI L. CHEN, GUO Z. WU, TAK S.                           :
CHENG, BI X. YANG, MEI F. HE, XIU Y.                     :
GUO, JIAN Z. LUO, HUI LIN, YU J. LIN,                    :
LONG FANG, XIAO H. ZHENG, ZHONG LI,                      :
JUN ZHANG, MING HO, XIU H. JIANG,                        :
XIAO Z. ZHANG, SKY WONG, WU C.                           :
CAO, SHOU F. LAM, OY K. KWAN, ZHEN                       :           2010 CV 5288 (PAC)(DF)
Z. WU, SHAO J. NG, and YAN X. LIN,                       :
                                                         :
                    Plaintiffs,                          :
                                                         :
           - against -                                   :
                                                         :
TYT EAST CORP., JIN HUA RESTAURANT                       :
INC., and MICHAEL LAM,                                   :
                                                         :
                    Defendants.                          :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND
99 Hudson Street
New York, New York 10013
(212) 966-5932

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF FACTS .........................................................................4

ARGUMENT ..............................................................................................8

    I.    TYT AND JIN HUA ARE EACH LIABLE TO PLAINTIFFS ON THEIR
        MINIMUM WAGE AND OVERTIME CLAIMS ...................................9

        A.   TYT Is Liable Because It and Jin Hua Are Part of a Single Integrated
            Enterprise ......................................................................12

        B.   TYT Is Liable Because It Exercised Formal Control Over Plaintiffs..............16

        C.   TYT Is Liable Because It Exercised Functional Control Over Plaintiffs ........19

        D.   TYT Is Liable as Plaintiffs' Employer Under Every Applicable test.............21

    II.   DEFENDANTS CANNOT RELY ON THE FLSA TIP CREDIT TO
        EXCUSE THEIR FAILURE TO PAY PLAINTIFFS THE REQUIRED
        MINIMUM WAGE ................................................................21

    III.  DEFENDANTS FAILED TO PROPERLY CALCULATE AND
        PAY THE OVERTIME WAGES OWED TO PLAINTIFFS ................................24

CONCLUSION.........................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### Cases

*Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184 (S.D.N.Y. 2003)...................... 9

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998)....................................... 10

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193 (2d Cir. 2005) ................................... 12, 13

*Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983) ....................................................... 2, 11, 14

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008)................. 10, 11, 12, 13

*Bartels v. Birmingham*, 332 U.S. 126 (1947) ............................................................................. 19

*Bennett v. Goord*, 343 F.3d 133 (2d Cir. 2003) ......................................................................... 4

*Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) ............................... 16

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) ....................................................... 12

*Carter v. Dutchess Community Coll.*, 735 F.2d 8 (2d Cir. 1984) ......................................... *passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 8

*Chan v. Sung Yue Tung Corp.*,
    No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) ............................ 22

*Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ................................ 13

*Christensen v. Harris County*, 529 U.S. 576 (2000).................................................................... 13

*Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)..................... 3, 23

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496 (1977).............................. 4

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995) ................................. 12, 13, 15

*Dunlop v. Ind. Am. Corp.*, 516 F.2d 498 (5th Cir. 1975)............................................................. 10

*Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961) .................................................... 11

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004)....................................................................... 13

*Hart v. Rick's Cabaret Int'l Inc.*,
    No. 09 Civ. 3043, 2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17, 2010)........................ 9

**PAGE**

*Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132 (2d Cir. 1999) ......................................... 16, 17, 18

*Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294 (6th Cir. 1998) ......................... 22, 23

*Lihli Fashions Corp. v. NLRB*, 80 F.3d 743 (2d Cir. 1996)........................................ 13, 14, 15, 16

*Lin v. Great Rose Fashion, Inc.*,
   No. 08-cv-4778, 2009 U.S. Dist. LEXIS 46726 (E.D.N.Y. June 2, 2009) ............................ 12

*Lopez v. Silverman*, 14 F. Supp. 2d 405 (S.D.N.Y. 1998) ............................................... 19

*Martin v. Tango's Rest., Inc.*, 969 F.2d 1319 (1st Cir. 1992)......................................... 22, 23

*Reich v. Chez Robert, Inc.*, 28 F.3d 401 (3d Cir. 1994).......................................... 3, 23

*Rodriguez v. Almighty Cleaning, Inc.*,
   No. CV 09-2997, 2011 U.S. Dist. LEXIS 19111 (E.D.N.Y. Feb. 28, 2011) ........................... 9

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) .................................... 10, 13

*Solis v. Min Fang Yang*, 345 F. App'x 35 (6th Cir. 2009)............................................ 23

*Takacs v. Hahn Auto. Corp.*,
   No. C-3-95-404, 1999 U.S. Dist. LEXIS 21694 (S.D. Ohio Apr. 23, 1999)......................... 14

*United States v. Rosenwasser*, 323 U.S. 360 (1945)............................................. 10, 11

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003).................................... *passim*

**Statutes**

29 C.F.R. § 791.2(a)............................................................................................... 10

29 C.F.R. § 791.2(b)........................................................................................... 19, 20

29 U.S.C. § 203................................................................................................... 9

29 U.S.C. § 203(d) ............................................................................................. 10

29 U.S.C. § 203(m) ...................................................................................... *passim*

29 U.S.C. § 203(s).............................................................................................. 10

29 U.S.C. § 206(a) ......................................................................................... 1, 9

29 U.S.C. § 207(a) ...................................................................................... 1, 9, 24

**PAGE**

29 U.S.C. §§ 201 *et seq.* ....................................................................................... 1

Fed. R. Civ. P. 30(b)(6) ......................................................................................... 24

Fed. R. Civ. P. 56(c) ............................................................................................... 8

N.Y. C.P.L.R. 105(u) ............................................................................................. 5

N.Y. Lab. Law § 191(1) ......................................................................................... 1

N.Y. Lab. Law § 650 *et seq.* ................................................................................. 1

N.Y. Lab. Law § 652 .............................................................................................. 1

12 N.Y. Comp. Codes R. & Regs. § 137–1.3 (2010) ........................................... 1

## Other Authorities

Opinion Letter from Dep't of Labor, Wage & Hour Div., 1986 DOLWH LEXIS 2
  (Jan. 7, 1986) .............................................................................................. 13, 20

U.S. Department of Labor, Fact Sheet #15: Tipped Employees Under the Fair Labor
  Standards Act (Mar. 2011), *available at*
  http://www.dol.gov/whd/regs/compliance/whdfs15.pdf ...................................... 24

Updating Regulations Issued Under the Fair Labor Standards Act, Fed. Reg. 18,832
  (Apr. 5, 2011) (to be codified at 29 C.F.R. § 531.59) ......................................... 22

## PRELIMINARY STATEMENT

Plaintiffs are twenty-two waiters, waitresses, bussers, and dim sum sellers who worked at Jin Hua Restaurant, Inc. ("Jin Hua" or the "Restaurant") between August 2009 and April 22, 2010, when the Restaurant was suddenly shut down by its parent company, TYT East Corp. ("TYT"), and Plaintiffs were put out of work.[1]  During the time they worked at the Restaurant, Plaintiffs were paid less than the legally-mandated minimum wage of $7.25 per hour, *see* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652, and were not paid the correct overtime wage for the hours they worked, *see* 29 U.S.C. § 207(a)(1); N.Y. Lab. Law § 650 *et seq.*; 12 N.Y. Comp. Codes R. & Regs. § 137–1.3 (2010) (consolidated at 12 N.Y. Comp. Codes R. & Regs. § 146). Plaintiffs also were never paid any wages *at all* in the weeks prior to the closing of the Restaurant, in violation of N.Y. Labor Law § 191(1).  TYT, Jin Hua, and Michael Lam, the general manager and CEO of Jin Hua, were all named as defendants in this action.[2]

Unlike the majority of cases brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 650 *et seq.* (the "NYLL" or "Labor Law"), this case is not primarily a dispute over the hours Plaintiffs worked or the wages they received.  Indeed, Defendants have not disputed Plaintiffs' hours, or that Plaintiffs went unpaid for some period of time prior to the close of the restaurant.  Instead, the main issues in this case are (1) whether Defendant TYT may be held liable as an employer of Plaintiffs under the FLSA and the NYLL; and (2) whether Defendants violated the FLSA and the

---

[1] Plaintiffs are Guo Z. Wu, Tak S. Cheng, Bi X. Yang, Mei F. He, Xiu Y. Guo, Jian Z. Luo, Hui Lin, Yu J. Lin, Long Fang, Xiao H. Zheng, Zhong Li, Jun Zhang, Ming Ho, Xiu H. Jiang, Xiao Z. Zhang, Sky Wong, Wu C. Cao, Shou F. Lam, Oy K. Kwan, Zhen Z. Wu, Shao J. Ng, and Yan X. Lin (collectively, "Plaintiffs").  Hui L. Chen withdrew from this case on March 14, 2011.

[2] Defendant Michael Lam has not appeared in this action.  Accordingly, "Defendants" refers to TYT and Jin Hua.

NYLL by paying Plaintiffs at an hourly rate below the legally required minimum and overtime wages.  The record is unequivocal that these questions must be answered in the affirmative: first, because TYT falls within the FLSA's definition of "employer" under any of the relevant tests, and second, because it is evident that Defendants were not entitled to deduct the "tip credit" under § 203(m) of the FLSA and that Defendants improperly calculated Plaintiffs' overtime pay.

Whether an employment relationship exists between an employee and an entity other than that employee's nominal employer may be evaluated here under two tests: first, whether TYT and Jin Hua, as parent and subsidiary, should be treated as a single integrated employer because they were so interrelated as to justify holding the conduct of Jin Hua against TYT, *see, e.g., Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983); and second, whether the economic reality of the relationship, in light of all the circumstances, demonstrates that TYT exercised formal or functional control over Plaintiffs, and thus was Plaintiffs' employer, *see, e.g., Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003).  The undisputed material facts demonstrate both the marked interrelatedness of TYT and Jin Hua and the economic reality that TYT exercised significant control, both formally and functionally, over its wholly-owned subsidiary, Jin Hua. To name but a few examples: TYT's shareholders and directors directly supervised the daily operations of the Restaurant; the Restaurant's CEO and general manager was a director and employee of TYT; and Jin Hua and TYT had the exact same shareholders.  Accordingly, under either theory, TYT is liable for the FLSA and NYLL violations committed by Jin Hua.

TYT may argue that it should not be liable because any FLSA violations were committed by defendant Michael Lam, former CEO of Jin Hua, who TYT's chairman claimed "went rogue," seized control of the Restaurant, and refused the efforts of TYT to ensure his compliance with the law.  However, even assuming these allegations to be true, they are irrelevant to whether

2

TYT should be held liable as Plaintiffs' employer.  TYT selected and hired Lam to manage the Restaurant as its employee.  TYT had the ability to control Lam at all times, even if it chose not to exercise that authority, as demonstrated by the fact that TYT ultimately decided to fire Lam (and Plaintiffs) and close the Restaurant.  TYT's failure to exercise its authority over Lam sooner is a reason to impose liability on TYT, not to excuse it, and Plaintiffs should be granted summary judgment on their claim that TYT was their employer under the FLSA and the NYLL.

Plaintiffs also should be granted summary judgment on the issue of whether Defendants were entitled to claim the FLSA tip credit.  Both the statute and the regulations promulgated thereunder make clear that employers are only allowed to pay workers at the lower, tipped wage when they have complied with the requirements of the statute, which are strictly construed.  *See, e.g.*, *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).  By its plain language, the statute requires that an employee be "informed *by the employer* of the provisions of [the tip credit] subsection." 29 U.S.C. § 203(m) (emphasis added).  Here, it is undisputed that Defendants and their agents never informed Plaintiffs of their intention to claim the tip credit, or regarding any provision of the tip credit subsection.  Accordingly, Plaintiffs are entitled to recover the difference between the wage they were paid and the minimum wage for every hour that they worked, regardless of whether they in fact received tips.  *See, e.g.*, *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994) (holding that the requirements of § 203(m) apply even where tips were actually received).

Finally, Plaintiffs should be awarded summary judgment on their claim that Defendants failed to properly calculate and pay them for the overtime hours that they worked.  It is undisputed that Defendants improperly calculated the overtime wage to which Plaintiffs were entitled, and so Plaintiffs should receive an additional amount for each overtime hour worked.

3

## STATEMENT OF FACTS

In 2003 or 2004, Fen Zheng founded Defendant TYT, originally as a money lending business.  (Plaintiffs' Statement Pursuant to Local Rule 56.1 of Undisputed Facts in Support of Motion for Summary Judgment ("Rule 56.1 Stmt.") ¶ 1.)  In 2008, Jixiong Ni,[3] Zheng's ex-husband, recruited additional shareholders so that TYT could lease the property located at 35–37 East Broadway, New York, New York, renovate it, and sublease it.  (*Id.* ¶ 2.)  TYT established a board of directors chaired by Ni.  (*Id.* ¶¶ 2, 5.)

At the time TYT leased the property at 35–37 East Broadway, it knew that Nice Restaurant, a Chinese restaurant located on the first and second floor, had closed after the workers asserted that the restaurant and its owners had committed various labor law violations.  (*Id.* ¶ 13.)  For several years thereafter, the Local 318 Restaurant Workers Union (the "Union") had picketed in front of the building.  (*Id.* ¶ 16.)  Even so, TYT intended to find a restaurant tenant to lease out the Nice Restaurant space after renovation, and began preliminary negotiations with the Union to halt the picketing and other labor action going on in front of the building.  (*Id.* ¶ 17.)

In early 2009, TYT made the decision to start its own restaurant in the Nice Restaurant space rather than lease it out to a third party.  On April 6, 2009, TYT hired defendant Michael Lam[4] to be the chief executive officer of its "Restaurant Department," and he was also elected to the TYT board of directors.  (*Id.* ¶¶ 5, 7.)[5]  One week later, on April 13, 2009, TYT incorporated

---

[3] Jixiong Ni is also known as Ji Xiong Ni.

[4] Michael Lam is also known as Chen Shun Lam.

[5] Plaintiffs' Rule 56.1 Statement refers to a verified complaint filed by corporate Defendants TYT and Jin Hua in the Supreme Court of the State of New York for the County of New York on April 21, 2010, making various claims against Michael Lam and TYT shareholders David Gao and Chen Hua regarding some of the same underlying factual matters as this lawsuit.  (*See* Declaration of Matthew B. Rowland, dated July 5, 2011 ("Rowland Decl.") Ex. K.)  Under New York and Second Circuit precedent, a verified complaint is "treated as an affidavit for

4

Jin Hua.  (*Id.* ¶ 10.)  The TYT shareholders individually owned equivalent proportions of TYT

and Jin Hua.  (*Id.* ¶ 11.)  Two days after the Restaurant was incorporated, TYT signed a sublease

agreement to rent out space at 35–37 East Broadway to the Restaurant.  (*Id.* ¶ 13.)

From the outset, TYT failed to adhere to corporate formalities with respect to Jin Hua.

There is no Jin Hua shareholders' agreement.  Jin Hua never established a board of directors, and

the Jin Hua shareholders never convened separately from meetings of TYT.  (*Id.* ¶ 12.)  TYT did

not require Jin Hua to pay a security deposit for its sublease, and despite sublease obligations,

TYT never collected monthly rent from the Restaurant.  (*Id.* ¶ 13.)  TYT required Michael Lam

to share Jin Hua business records with an accountant appointed by TYT and otherwise to keep

TYT apprised of activity at Jin Hua.  (*Id.* ¶ 8.)

TYT became directly involved in planning Jin Hua.  Between April 2009 and September

2009, when Jin Hua opened for business, TYT spent $700,000 renovating the Restaurant's space.

TYT purchased stoves, tables, chairs, utensils, and other equipment for the Restaurant.  (*Id.* ¶

14.)  TYT chairman Ni directed the renovations personally and without assistance.  He also

installed surveillance cameras at the Restaurant.  (*Id.* ¶ 15.)

Ni testified that during that same period he personally spoke with Steven Wong[6] and

Wing Lam,[7] whom Ni believed had influence with the Union, in an attempt to resolve any labor

disputes and allow the opening of a restaurant at 35–37 East Broadway.  (*Id.* ¶ 17.)  The Union

had picketed outside 35–37 East Broadway for years to protest the closing of Nice Restaurant,

---

summary judgment purposes."  *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003); *see also Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 500 (1977) (observing that under the C.P.L.R., at summary judgment, a verified complaint is "the functional equivalent of an affidavit"); N.Y. C.P.L.R. 105(u) (("[a] 'verified pleading' may be used as an affidavit whenever the latter is required").

[6] Steven Wong is also known as Huang Ke Qiang.

[7] Wing Lam is also known as Lam Song.

which had formerly operated at that location.  (*Id.* ¶ 16.)  Ni testified that TYT gave Michael

Lam a total of $200,000 to give to the Union to resolve labor unrest.  (*Id.* ¶ 18.)  Subsequently,

several Union members were hired as Jin Hua wait staff.  (*Id.* ¶ 20.)

TYT maintained its presence at Jin Hua after the Restaurant opened for business in

September 2009.  When Jin Hua failed to establish a bank account in time to pay its employees'

first set of wages, TYT dispatched two of its shareholders and directors—David Gao, then the

corporate secretary, and Hua Chen—to distribute the Restaurant employees' wages.  (*Id.* ¶ 22.)

TYT also asked Gao to retrieve the Jin Hua business records.  (*Id.* ¶ 23.)  On at least one

occasion, TYT founder and president Zheng responded to Jin Hua employee complaints about

food quality in meals provided to them.  (*Id.* ¶ 32.)  TYT chairman Ni visited the Restaurant

kitchen and once went to the Restaurant to investigate a theft.  (*Id.* ¶ 33.)

TYT shareholders worked as managers at Jin Hua.  One, Yi Qiu Lin, served as the Jin

Hua purchasing manager after taking over as the TYT corporate secretary.  When the Restaurant

stopped paying Lin for his work, he resorted to self-help by taking the money from a banquet

held at the Restaurant.  (*Id.* ¶ 25.)  Another shareholder, Yan Yu Liu, acted as the Restaurant's

assistant general manager from September 2009 until December 2009 or January 2010.  Liu

supervised the daily operations of the Restaurant's business and verified the books at the end of

each day.  Liu also submitted Jin Hua's books to TYT's bookkeeper at the end of each day for a

period of time.  (*Id.* ¶¶ 26–28.)  A third shareholder, Hang Zhu, worked at the Restaurant from

around December 2009 or January 2010 until the Restaurant closed in April 2010.  During that

time he checked Jin Hua's books and records on a daily basis.  He also supervised the production

of dim sum, and, in the absence of other managers, would seat customers or direct wait staff to

do so.  (*Id.* ¶¶ 29–31.)  In Ni's estimation, between 80 and 90 percent of Jin Hua's patrons were

referred by TYT shareholders.  (*Id.* ¶ 34.)  In light of TYT's pervasive involvement at Jin Hua, it is unsurprising that in private conversation, Restaurant management frequently "mention[ed] that without the approval of TYT, Jin Hua would not be able to make a move."  (*Id.* ¶ 35.)

TYT continued to ignore the corporate separateness of Jin Hua after the Restaurant opened for business.  TYT never paid the Restaurant for the food it provided for TYT shareholder meetings.  (*Id.* ¶ 36.)  TYT permitted another one of its subsidiaries doing business at 35–37 East Broadway, the Yummy Yummy Bakery (the "Bakery"), to share basement storage space with Jin Hua and to use the Restaurant's seating area before the dinner business hours without compensating Jin Hua.  (*Id.* ¶ 37.)  Jin Hua, in turn, utilized storage space on the third floor of 35–37 East Broadway that it had not subleased.  (*Id.* ¶ 38.)

As time passed, the relationship between TYT and Jin Hua chief executive officer Lam soured.  (*Id.* ¶ 39.)  On March 12, 2010, TYT chairman Ni wrote to Lam via certified mail to inform him that "your engagement as CEO in *our restaurant department* (Jin Hua Restaurant) will be terminated at the end of this month."  (*Id.* ¶ 40 (emphasis added).)  The TYT shareholders reaffirmed the decision to terminate Lam at a special shareholders meeting convened telephonically on April 16, 2010.  (*Id.* ¶ 41.)  At some point during the falling out, Ni approached Plaintiff Sky Wong to ask if he would be qualified to replace Lam.  (*Id.* ¶ 42.)  In the end, TYT hired its secretary and shareholder Yi Qiu Lin to replace Lam as the Jin Hua chief executive officer, with instructions to wind down the Restaurant business.  (*Id.* ¶ 43.)  TYT ultimately sued Lam and others in New York Supreme Court, arguing that because Lam was "an *employee of TYT*," he "owe[d] a fiduciary duty [of good faith and loyalty] *to TYT and its shareholders*."  (*Id.* ¶ 44 (emphasis added).)

TYT decided to close the Restaurant after losing nearly $570,000.  (*Id.* ¶ 45.)  TYT chairman Ni, who had previously intervened with the Union on the Restaurant's behalf, again consulted Steven Wong when TYT decided to close Jin Hua.  (*Id.* ¶ 46.)  Ni personally informed at least one employee that the Restaurant had been permanently closed on August 22, 2010.  (*Id.* ¶ 47.)  Ni testified that at that time, he was aware that Jin Hua employees had not been paid for between one and three pay periods.  (*Id.* ¶ 49.)

Most Restaurant employees were paid base wages of either $5.50 per hour or $7.00 per hour.  (*Id.* ¶¶ 52–56.)  No one from TYT or Jin Hua ever informed these employees, either orally or in writing, that they were paid base wages below the minimum wage because they received tips.  (*Id.* ¶ 60.)  Defendants also failed to properly calculate and pay Plaintiffs' overtime wages.  (*Id.* ¶ 52.)   In its State lawsuit against Lam and others, TYT alleges that Jin Hua failed to pay employee wages in accordance with applicable labor laws.  (*Id.* ¶ 61.)

## ARGUMENT

Summary judgment should be granted to Plaintiffs on each of their claims because "the pleadings, the discovery and disclosure materials on file, and [the] affidavits show that there is no genuine issue as to any material fact, and [Plaintiffs] are entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

*First*, it is clear that TYT is jointly liable with Jin Hua as Plaintiffs' employer.  The undisputed facts establish that TYT and Jin Hua should be treated as a single integrated enterprise with respect to Plaintiffs' claimed wage violations.  Moreover, the circumstances as a

whole demonstrate the economic reality that TYT was Plaintiffs' employer because it exerted significant control, both formally and functionally, over the Restaurant and its dealings with Plaintiffs.

    *Second*, it is undisputed that Defendants did not inform Plaintiffs regarding the "tip credit," and Defendants therefore were not entitled to pay Plaintiffs less than the minimum wage. Accordingly, Plaintiffs should recover the difference between their hourly wage and the minimum wage.  Plaintiffs should also recover the minimum wage plus overtime for the weeks they were not paid.

    *Third*, Defendants failed to properly calculate and pay Plaintiffs for the overtime hours they worked.  The record is clear that Defendants mistakenly used the lower "tip credit" wage as their basis in calculating Plaintiffs' overtime wage, rather than using the minimum wage and then subtracting the applicable tip credit.  Plaintiffs should therefore recover the difference for every overtime hour they worked.

## I.    TYT AND JIN HUA ARE EACH LIABLE TO PLAINTIFFS ON THEIR MINIMUM WAGE AND OVERTIME CLAIMS[8]

    Because both Jin Hua and TYT were employers of Plaintiffs as defined in the FLSA, both are liable for these claims.[9]  It is undisputed that Plaintiffs were employees of Jin Hua, (Rule

---

[8] The FLSA and New York Labor Law minimum wage and overtime provisions relevant here are analyzed under the same legal standard.  *See, e.g.*, *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003); *see also Rodriguez v. Almighty Cleaning, Inc.*, No. CV 09-2997, 2011 U.S. Dist. LEXIS 19111, at *28 (E.D.N.Y. Feb. 28, 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL."); *Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043, 2010 U.S. Dist. LEXIS 137129, at *7–8 (S.D.N.Y. Dec. 17, 2010) (same).

[9] TYT and Jin Hua are each subject to the minimum wage and overtime requirements of the FLSA and the NYLL.  Plaintiffs bring their claims under provisions of the FLSA that impose duties on "employers."  *See, e.g.*, 29 U.S.C. § 206(a) (requiring "[e]very employer [to] pay to each of his employees . . . not less than" a prescribed minimum wage); *id.* § 207(a) (requiring every employer to pay hours worked in excess of forty hours per week "at a rate of not less than one and one-half times the regular rate").  The FLSA applies to every employee "employed in an enterprise engaged in commerce."  *Id.* §§ 203, 206(a), 207(a).

A business constitutes an "[e]nterprise engaged in commerce" under the FLSA if it:

56.1 Stmt. ¶¶ 52–59); the issue is whether they were also employed by TYT.  The FLSA definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d), a broad definition imposing responsibilities on entities that "might not qualify as such under a strict application of traditional agency law principles."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 (1945)); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ("The Act . . . require[s] its application to many persons and working relationships which, prior to the Act, were not deemed to fall within an employer-employee category."); *Barfield*, 537 F.3d at 141 (explaining that a broad reading of the statutory terms is necessary "to effectuate the remedial purposes of the Act").  The Department of Labor's regulations interpreting the FLSA explain that "[a] single individual may stand in the relation of an employee to two or more employers at the same time."  29 C.F.R. § 791.2(a).

Applying this broad definition of "employer," courts have held entities other than an employee's nominal employer liable in many different circumstances, including as single integrated employers, where the parent and subsidiary are treated as one employer, and as joint employers, where both the parent and the subsidiary are deemed to have an employment

---

       (i)  has employees engaged in commerce . . . or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
       (ii)  is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

*Id.* § 203(s)(1)(A).  Even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."  *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (Sotomayor, J.) (collecting cases).  Accordingly, "'virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.'"  *Id.* (quoting *Dunlop v. Ind. Am. Corp.*, 516 F.2d 498, 501–02 (5th Cir. 1975)).  Here, the evidence shows that Jin Hua employees handled goods or materials that moved or were produced in interstate commerce.  (*See* Rule 56.1 Stmt. ¶ 63.)  Moreover, it is undisputed that Jin Hua had an annual gross volume of business greater than $500,000.  (*Id.* ¶ 62.)  Jin Hua is therefore an employer subject to the FLSA.  TYT has stipulated that it meets the requirements of this section, and therefore it too is covered by the FLSA.  (*Id.* ¶ 64.)

relationship with the employee.  The single integrated employer test was first articulated in cases under the National Labor Relations Act (the "NLRA") and Title VII of the Civil Rights Act, both of which are remedial statutes, liberally constructed, with broad interpretation given to the employer and employee provisions.  *See Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir. 1983).  In the parent-subsidiary context, "[t]he showing required to warrant a finding of single-employer status has been described as 'highly integrated with respect to ownership and operations.'"  *Id.* at 1338 (citation omitted).  Here, the evidence demonstrates that TYT and Jin Hua were highly integrated with respect to ownership and operations given their identical ownership, overlapping management, and the extensive control exerted by TYT over the operations of its subsidiary, Jin Hua.

The interpretation given to the employer and employee provisions of the FLSA is even broader than that under the NLRA or Title VII; indeed, the Second Circuit has said that the FLSA contains "the broadest definition [of 'employ'] that has ever been included in any one act."  *Zheng*, 335 F.3d at 69 (quoting *Rosenwasser*, 323 U.S. at 363 n.3) (alteration in original); *see also Barfield*, 537 F.3d at 141 (noting the "striking breadth" of the FLSA's definition of "employ").  "[I]n determining whether an employment relationship exists for purposes of the FLSA, [courts] must evaluate the 'economic reality' of the relationship."  *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 9 (2d Cir. 1984) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).  This is to be "determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"  *Barfield*, 537 F.3d at 141 (citation omitted).  "[A]n entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them."  *Zheng*, 355 F.3d at 70.

11

In *Barfield*, the Second Circuit reviewed the precedents applying the FLSA economic reality test and held that they "state[d] no rigid rule for the identification of an FLSA employer," 537 F.3d at 143, but rather that a FLSA employer could be identified in a number of different circumstances, including: (1) where a defendant-employer exercised formal control over a plaintiff-employee, *id.* (citing *Carter*, 735 F.2d at 12); (2) where a defendant-employer exercised functional control over a plaintiff-employee, *id.* (citing *Zheng*, 355 F.3d at 72); or (3) where a putative independent contractor was in fact an employee, *id.* (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988)).  In evaluating whether a given defendant was an employer under the FLSA, a court can consider the factors set forth in the case law, but "is also free to consider *any other factors* it deems relevant to its assessment of the economic realities." *Zheng*, 355 F.3d at 71–72 (emphasis added); *see also Barfield*, 537 F.3d at 141–42 (instructing that employment under the FLSA is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances"); *Lin v. Great Rose Fashion, Inc.*, No. 08-cv-4778, 2009 U.S. Dist. LEXIS 46726, at *34–35 (E.D.N.Y. June 2, 2009) (noting that the "Second Circuit has . . . recogniz[ed] up to ten common factors").

A.      **TYT Is Liable Because It and Jin Hua Are Part of a Single Integrated Enterprise**

TYT is liable for Plaintiffs' injuries as an employer because TYT and Jin Hua are not separate independent businesses, but are, in fact, a single integrated enterprise.  Where an entity is so interrelated with an employee's nominal employer that the two companies are effectively a single enterprise, the entity shares the nominal employer's responsibilities under the labor laws, and is jointly liable for violations suffered by the employee.  *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)  ("[T]he question of parent-subsidiary liability" may be addressed by application of a "flexible four-part test aimed at determining the degree of interrelationship between the two entities."); *see also Arculeo v. On-Site Sales & Mktg., LLC*,

425 F.3d 193, 198 (2d Cir. 2005) (noting that there is "well-established authority" that "an employee, who is technically employed on the books of one entity, . . . may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer"); *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747–48 (2d Cir. 1996) (upholding NLRB decision that defendants constituted a single integrated employer where there operations were "functionally integrated"). These decisions "defin[ing] the coverage of the employer-employee relationship under the Labor and Social Security acts are persuasive in the consideration of a similar coverage under the [FLSA]." *Rutherford*, 331 U.S. at 723. Moreover, the Department of Labor has opined under the FLSA that where a subsidiary is controlled by its parent through total stock ownership, the two "constituted but *one business entity* with respect to the employees of the [subsidiary]." Opinion Letter from Dep't of Labor, Wage & Hour Div., 1986 DOLWH LEXIS 2, at *3–4 (Jan. 7, 1986) (emphasis added).[10]

To determine whether two entities constitute a single integrated employer, the Second Circuit considers four factors: "evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook*, 69 F.3d at 1240. However, "not every factor need be present, and no particular factor is controlling." *Lihli*, 80 F.3d at 747. The standard is "whether, upon review of the circumstances of the intercorporate relationship, [the parent] exercises a degree of control that exceeds the

---

[10] While opinion letters are not binding authority, see *Gualandi v. Adams*, 385 F.3d 236, 243 (2d Cir. 2004), and do not command *Chevron* deference, see *Christensen v. Harris County*, 529 U.S. 576, 586–87 (2000) (citing *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984)), they "represent 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance,'" and the Second Circuit "has 'often relied on DOL Opinion Letters for their persuasive value,'" *Barfield*, 537 F.3d at 149 (citations omitted).

control normally exercised by a parent corporation which is separate and distinct from the subsidiary corporate entity." *Armbruster*, 711 F.2d at 1338 (6th Cir. 1983).

The record establishes that TYT exercises a degree of control over Jin Hua that is much greater than that normally exercised by a parent over its subsidiary. *Cf. id.* at 1338–39. First, the operations of TYT and Jin Hua are thoroughly interrelated. TYT and Jin Hua shared space, equipment, and other resources. *See, e.g.*, *Takacs v. Hahn Auto. Corp.*, No. C-3-95-404, 1999 U.S. Dist. LEXIS 21694, at *16 (S.D. Ohio Apr. 23, 1999) (holding a parent liable for its subsidiary's FLSA violations on an integrated enterprise theory, where the two entities were "significantly interrelated, insofar as they share common offices . . . and common equipment"). TYT leased and paid for the renovations of the building where the Restaurant was located, and it purchased and owned the equipment used there. (Rule 56.1 Stmt. ¶¶ 2, 14.) Jin Hua never reimbursed TYT for these expenditures, nor did it pay rent to TYT for the space. (*Id.* ¶ 13.) Jin Hua, TYT, and other TYT affiliates also shared certain spaces in the building, such as the basement, the restaurant dining room, and storage space, without compensating each other for these uses. (*Id.* ¶¶ 36–38.) In addition, TYT and Jin Hua shared personnel and funds: the CEO of Jin Hua was an employee and board member of TYT (and father-in-law of a TYT shareholder and director), (*id.* ¶¶ 5, 7); another director and shareholder of TYT was the purchasing manager for the Restaurant, (*id.* ¶ 25); a shareholder of TYT was the assistant general manager of the Restaurant and was later replaced by another TYT shareholder, (*id.* ¶¶ 26–31); and two TYT directors paid the first wages to Jin Hua employees in cash, (*id.* ¶ 22).

Second, TYT had control over Jin Hua's labor relations. TYT made the major employment decisions related to Jin Hua. *See Lihli*, 80 F.3d at 747 (finding "evidence of centralized control of labor relations" because "both companies share some employees and

14

appear to make joint hiring and firing decisions"). Before opening the Restaurant, TYT engaged in protracted negotiations with the Union related to labor issues. (Rule 56.1 Stmt. ¶¶ 16–18.) TYT also hired as its own employee Michael Lam, the Restaurant's manager (who had the authority to hire, fire, set the wages, and supervise Plaintiffs), and discussed with Plaintiff Sky Wong the possibility of Wong replacing Lam. (*Id.* ¶¶ 7, 19, 39–42.) TYT ultimately fired Lam and replaced him with TYT secretary and shareholder Yi Qiu Lin. (*Id.* ¶ 43.)

Third, TYT and Jin Hua had common management. Jin Hua CEO Michael Lam was a TYT director, chosen and employed by TYT to run Jin Hua, and was required to report to the TYT board. (*Id.* ¶¶ 5, 7–8.) *Cf. Cook*, 69 F.3d at 1241 (finding that a parent company and its subsidiary "maintained a common management structure" because the subsidiary's president "operated out of" the parent company's offices). Jin Hua had no other officers or directors. (Rule 56.1 Stmt. ¶ 12.) TYT's chairman exercised control over both entities and was actively involved in both businesses. (*Id.* ¶¶ 2, 15, 17, 33, 40, 42, 46–47, 60.) Moreover, TYT secretary Yi Qiu Lin served as purchasing manager of the Restaurant and shareholder Yan Yu Liu served as the assistant general manager; shareholder Hang Zhu also supervised Restaurant operations. (*Id.* ¶¶ 25–31.) *See, e.g.*, *Lihli*, 80 F.3d at 747 (finding evidence that two companies had common management because "Lihli Hsu serves as president of both companies, splits her time between the [locations of the two entities], and exercises ultimate business and artistic control over both entities").

Finally, TYT and Jin Hua were owned by the same shareholders (Rule 56.1 Stmt. ¶ 11), who exercised significant control over Jin Hua. Indeed, these shareholders treated the two entities as one: Jin Hua never held any board meetings separately from TYT, and TYT did not require a security deposit from Jin Hua upon the signing of the sublease between the two entities.

15

(*Id.* ¶¶ 12–13.)  Similarly, Jin Hua never actually paid any rent to TYT.  (*Id.* ¶ 13.)  In *Lihli*, by

contrast, the court determined that the mere *similarity* in ownership between the two entities was

sufficient to support a finding that they were a single enterprise.  *See* 80 F.3d at 747.  Tellingly,

TYT's shareholders never gave the Restaurant sufficient capital to operate as an independent

business, leaving it always dependent on TYT.  (Rule 56.1 Smt. ¶¶ 13 (Jin Hua never paid rent to

TYT), 14 (TYT spent $700,000 renovating the Restaurant space), 21 (TYT gave Michael Lam

$85,000 to "buy things" when Jin Hua opened), 45 (TYT closed Jin Hua after it lost nearly

$570,000 in four months).)

**B.     TYT Is Liable Because It Exercised Formal Control Over Plaintiffs**

TYT is also liable as an employer for the FLSA violations suffered by Plaintiffs, because,

as a matter of economic reality, TYT exercised formal control over Plaintiffs.  The Second

Circuit has instructed that "the 'economic reality' test . . . include[s] inquiries into: 'whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records.'"  *Carter*, 735 F.2d at 12 (quoting *Bonnette v.

Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  The court explained that

"the power to control a worker clearly is a crucial factor in determining whether an employment

relationship exists," but the control need not be "ultimate."  *Id.*

In *Herman v. RSR Security Services, Ltd.*, the court applied these four factors in

determining whether a company's chairman, who "exercised broad authority over [the

company's] operations," was liable as an employer for FLSA violations even though "he was not

directly involved in the daily supervision of the" employees.  172 F.3d 132, 136 (2d Cir. 1999).

The court concluded that he was.  *Id.* at 141.  With regard to the first factor, the court noted that

the defendant had hired a small number of employees of the company.  It explained that

16

"[a]lthough this hiring involved mainly managerial staff, the fact that he hired individuals who were in charge of the [aggrieved employees] is a strong indication of control." *Id.* at 140.  The court found that the second factor likewise supported a finding of joint employment because the defendant "occasion[ally] supervised and controlled employee work schedules and the conditions of employment." *Id.*  With regard to the third factor, the court noted that although the defendant had not set the rate of payment, he had halted the practice of paying the employees as independent contractors and had signed paychecks on three occasions. *Id.*  The court found no evidence showing that the fourth factor supported a finding of joint employment, but held the absence of evidence that the defendant maintained employment records was not dispositive. *Id.*

Applying these factors here, it is clear that as a matter of economic reality, and based on the undisputed material facts, TYT was Plaintiffs' employer.  First, TYT had the power to hire and fire employees of Jin Hua.  Like the defendant in *Carter*, TYT "made the initial proposal to employ workers," making the decision to open a restaurant in the building it had leased at 35–37 East Broadway, hiring Michael Lam to be the CEO of its "Restaurant Department," and directly negotiating with Local 318 Restaurant Workers Union to stop picketing the restaurant space. (Rule 56.1 Stmt. ¶¶ 6–7, 16–18.) *See Carter*, 735 F.2d at 14.  Like the defendant chairman in *Herman*, TYT directly hired and employed the Plaintiffs' manager, Michael Lam, who hired the Plaintiffs.[11] (Rule 56.1 Stmt. ¶¶ 7, 19.)  After a dispute arose between Lam and TYT, TYT's chairman discussed with Plaintiff Sky Wong the possibility of Wong replacing Lam as general manager. (*Id.* ¶¶ 39, 43.)  Most importantly, TYT demonstrated its control over the Plaintiffs by

---

[11] Some Plaintiffs reported that they were hired by Steven Wong, who was hired by Lam to assist him in recruiting and interviewing workers.  Wong, however, reported to Lam and was working on his behalf in hiring Plaintiffs. (*See* Rule 56.1 Stmt. ¶ 19.)

firing them and Lam, replacing Lam with TYT director Yi Qiu Lin, and closing the restaurant. (*Id.* ¶¶ 40–43, 45–48.)

Second, TYT supervised and controlled the conditions of Plaintiffs' employment.  TYT conducted negotiations with the Union that resulted in the hiring of Union employees, and thereby, like the defendant in *Carter*, effectively "developed eligibility criteria" for restaurant employees.  735 F.2d at 14.  (*Id.* ¶¶ 16–20.)  TYT also established many of the conditions of Plaintiffs' employment by controlling the Restaurant's set-up and many aspects of its operations, such as designing and renovating the space it would use and selecting and purchasing the Restaurant's equipment.  (*Id.* ¶¶ 14.)  Lam's contract obligated him to report to the TYT board about Jin Hua's operations.  (*Id.* ¶ 8.)  Three TYT shareholders (one of whom was also a TYT director) worked in the Restaurant as managers, supervising daily operations, including Plaintiffs' performance of their duties, and handling the Restaurant's purchasing of supplies.  (*Id.* ¶¶ 25–31.)  Lam, a TYT employee and director, supervised and controlled the everyday work conditions of the Plaintiffs as CEO and general manager of the Restaurant.  (*Id.* ¶¶ 5, 7, 24.)  In April 2010, TYT fired Lam and closed the Restaurant.  (*Id.* ¶¶ 39–51.)

Third, TYT determined the rate and method of payment.  TYT "suggested a wage as to which there was no legal impediment," *Carter*, 735 F.2d at 14 (internal quotation marks omitted), instructing Lam to obey wage and hour laws (Rule 56.1 Stmt. ¶ 60).  TYT arranged for two TYT directors to pay Plaintiffs' first set of wages in cash.  (*Id.* ¶ 22.)  TYT appointed an accountant to manage the Restaurant's books.  (*Id.* ¶ 8.)  And, when the Restaurant closed, TYT took possession of the employees' final paychecks, choosing not to mail them.  (*Id.* ¶¶ 49–50.)

As in *Herman*, no evidence exists that TYT maintained employment records, but just as the court found the evidence in that case sufficient to support a finding of joint employment, the

18

evidence regarding the other three factors requires a finding of joint employment in this case as well.  As noted by the court in *Lopez v. Silverman*, 14 F. Supp. 2d 405 (S.D.N.Y. 1998), the formal control test is most likely to lead to a finding of joint employer status in "situations involving direct corporate subsidiaries or managing directors"—both of which are present here. *Id.* at 415.

**C.     TYT Is Liable Because It Exercised Functional Control Over Plaintiffs**

TYT is also liable as Plaintiffs' employer even in "the absence of the formal control measured by the *Carter* factors."  *Zheng*, 355 F.3d at 72.  The Second Circuit has rejected the premise that the *Carter* four-factor formal control test was the "exclusive touchstone of the joint employment inquiry under the FLSA."  *Id.* at 71.  Instead, the court held that the joint employment determination "is to be based on 'the circumstances of the whole activity,' viewed in light of 'economic reality.'"  *Id.* (citations omitted).  Even an entity that exercises no *formal* control over an employee—for example, one that "does not hire and fire its joint employees, directly dictate their hours, or pay them"—can be held liable for FLSA violations where it is shown that it exercises *informal* or *functional* control over the employee.  *See id.* at 70.

Moreover, the factors considered in *Zheng* are not exclusive; instead, a court "is also free to consider *any other factors* it deems *relevant* to its assessment of the economic realities."  *Id.* at 71–72 (emphasis added).  "The goal of the analysis is to determine whether the employees in question are economically dependent upon the putative employer.  Indeed, the very definition of 'employees' in this context is 'those who as a matter of economic reality are dependent upon the business to which they render service.'"  *Lopez*, 14 F. Supp. 2d at 414 (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).

In identifying additional relevant factors which may be used in determining whether TYT exercised functional control over the Plaintiffs, reference to the regulations issued by the

19

Department of Labor interpreting the FLSA is helpful.  *See* 29 C.F.R. § 791.2(b).  The regulations state that a defendant is a joint employer with an employee's nominal employer where "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  *Id.*  Moreover, the Department of Labor has opined that where an employee is employed by a wholly-owned subsidiary of a parent company, those two companies "constituted but one business entity with respect to the employees of the controlled business," and the parent company was therefore a joint employer of the employee.  Opinion Letter from Dep't of Labor, Wage & Hour Div., 1986 DOLWH LEXIS 2, at *3–4.  And, even if the Court finds that the single integrated enterprise test has not been met, the factors articulated under that test are relevant to whether TYT exerted functional control over Plaintiffs.  *See supra* Part I.A.

Here, the "circumstances of the whole activity," viewed in light of economic reality, demonstrate that TYT was Plaintiffs' joint employer because it exercised functional control over Plaintiffs.  First, two of the six illustrative factors described in *Zheng* are present here: TYT's "premises and equipment were used for [P]laintiffs' work," and TYT, or its agents, "supervised [P]laintiffs' work."  355 F.3d at 72; *see supra* Part I.B (TYT owned the master lease on the Restaurant space, which it designed and renovated prior to the opening of the Restaurant; TYT purchased the equipment used by the Restaurant, the use of which was included in the sublease; TYT and its agents supervised Plaintiffs' work).

Second, the undisputed material facts show that TYT controlled or was under common control with Jin Hua, and that TYT and Jin Hua were not "completely disassociated" with respect to Plaintiffs' employment.  *See* 29 C.F.R. § 791.2(b).  TYT established Jin Hua as its

"Restaurant Department."  (Rule 56.1 Stmt. ¶¶ 7, 40.)  TYT conducted Jin Hua's labor

negotiations, selected its site, and managed the preparations for its opening.  (*Id.* ¶¶ 13–20.)

TYT owned the master lease for the building at 35–37 East Broadway, of which it sublet two

floors to Jin Hua.  (*Id.* ¶¶ 6, 13.)  TYT purchased much of the equipment used by Jin Hua and

charged Jin Hua for its use as part of the sublease agreement.  (*Id.* 14.)  TYT and Jin Hua have

the same shareholders, who exercised their control by participating in the management and

operation of Jin Hua.  (*Id.* ¶¶ 11, 22–32.)  TYT hired and employed Michael Lam, the CEO and

general manager of Jin Hua.  (*Id.* ¶ 7.)  Most tellingly, when Jin Hua no longer served its

purposes, TYT fired Lam and closed the Restaurant.  (*Id.* ¶¶ 39–50.)  All of these circumstances

demonstrate that, as a matter of economic reality, Plaintiffs were under the functional control of

TYT while employed at Jin Hua.

**D.**     **TYT Is Liable as Plaintiffs' Employer Under Every Applicable Test**

TYT was Plaintiffs' employer as part of a single integrated enterprise with its wholly-

owned subsidiary Jin Hua.  TYT was also Plaintiffs' employer because it exercised formal

control over Plaintiffs.  Lastly, considering the whole circumstances of TYT's relationship with

Plaintiffs—the integrated relationship with Jin Hua, its formal control over Plaintiffs, as well as

additional facts such as the common ownership of TYT and Jin Hua—TYT is as a matter of

economic reality Plaintiffs' joint employer.  Accordingly, TYT is liable with Jin Hua for the

violation of Plaintiffs' rights under the FLSA and the NYLL.

**II.**    **DEFENDANTS CANNOT RELY ON THE FLSA TIP CREDIT TO EXCUSE**
         **THEIR FAILURE TO PAY PLAINTIFFS THE REQUIRED MINIMUM WAGE**

Plaintiffs are entitled to summary judgment on their claim that Defendants paid them less

than the FLSA minimum wage.  The parties do not dispute the hours Plaintiffs worked or the

amounts they were paid at the Restaurant.  (Rule 56.1 Stmt. ¶¶ 52–59.)  Defendants therefore

cannot dispute that Plaintiffs' base hourly wages fell short of the statutory minimum.  On the

contrary, the record is clear that none of the Plaintiff waiters, waitresses, or bussers earned more

than $7.00 per hour, with many earning as little as $5.50 per hour—well short of the $7.25

minimum mandated by the FLSA.[12]  (*Id.* ¶¶ 52–56.)

Moreover, both the statute and the case law make clear that Defendants cannot claim the

"tip credit" to excuse this underpayment.  Under Section 203(m) of the FLSA, an employer may

only count tips towards the minimum wage for a tipped employee if "such employee has been

informed *by the employer* of the provisions of this subsection . . . ."  29 U.S.C. § 203(m)(1)

(emphasis added); *accord Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992)

("Congress chose to allow employers a partial tip credit if, but only if, certain conditions are

met.").  "Employers bear the burden of showing that they have satisfied this requirement by, for

example, providing employees with a copy of § 203(m) and informing them that their tips will be

used as a credit against the minimum wage permitted by law."  *Chan v. Sung Yue Tung Corp.*,

No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770, at *18–19 (S.D.N.Y. Feb. 1, 2007).

As the Sixth Circuit has explained, this notice requirement provides that "an employer

must inform the employee that it intends to treat tips as satisfying part of the employer's

minimum wage obligation. . . .   In other words, an employer must inform its employees of its

intent to take a tip credit toward the employer's minimum wage obligation."[13]  *Kilgore v.*

---

[12] The five Plaintiff dim sum sellers—Oy K. Kwan, Shou F. Lam, Yan X. Lin, Shao J. Ng, and Zhen Z. Wu—each earned more than the FLSA minimum wage, did not receive tips, and were not subject to the tip credit. (*See* Rule 56.1 Stmt. ¶¶ 57–59.)  Their claims under the FLSA minimum wage provisions only encompass the pay periods for which Plaintiffs were not paid at all.  (*Id.* ¶ 49.)

[13] The Department of Labor has explained that "notice of the specific provisions of § 203(m) is required to adequately inform the [tipped] employee of the requirements of the tip credit."  Updating Regulations Issued Under the Fair Labor Standards Act, Fed. Reg. 18,832, 18,844 (Apr. 5, 2011) (to be codified at 29 C.F.R. § 531.59).  While the new regulation makes explicit the level of detail that employers must provide when informing tipped employees about the tip credit, it is also clear that employers have *always* been required to provide notice before claiming the tip credit; it is simply the level of detail contained in that notice that is being amended.  *See id.*

*Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) (citing *Martin*, 969 F.2d at 1322); *accord Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009).  The notice requirement "that the employer must fulfill to be eligible for the tip credit [is] *strictly construed*, and must be satisfied even if the employee received tips at least equivalent to the minimum wage."  *Chung*, 246 F. Supp. 2d at 229 (emphasis added) (citing *Reich*, 28 F.3d at 404).  But "[i]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage . . . ." *Reich*, 28 F.3d at 403.  This rule holds "regardless of whether employees suffered actual economic harm as a result." *Solis*, 345 F. App'x at 38.

Nor is it relevant whether plaintiff-employees knew about the provisions of the tip credit independent of notice by their employer.  Section 203(m), for instance, contains no exception based on the employee's independent knowledge of the tip credit.  The notice requirement applies *strictly* in the absence of affirmative proof that the employer notified its employees it was claiming the tip credit.  *See, e.g.*, *Martin*, 969 F.2d at 1322 (reversing the district court, which had inferred notice despite testimony to the contrary by reasoning that plaintiffs must have known their tips counted towards the minimum wage—or else they would not have accepted jobs at the lower "tip credit" wage when the restaurant offered other positions at the full minimum wage); *see also id.* ("If the penalty for omitting notice appears harsh, it is also true that the notice is not difficult for the employer to provide.")

In this case, the record demonstrates that Defendants failed to give Plaintiffs *any* notice that would satisfy the strict requirements for the tip credit.  Plaintiffs at their depositions and in their declarations confirmed that no one at the Restaurant ever informed them that their tips

would count towards the minimum wage.[14]  (Rule 56.1 Stmt. ¶ 60.)  TYT Chairman Ni testified

during his Rule 30(b)(6) deposition on behalf of TYT and Jin Hua that he did not know whether

Jin Hua's managers (or anyone else) ever told employees that the Restaurant was claiming the tip

credit or informed them of the provisions of Section 203(m).  (*Id.*)  Because they bear the burden

of showing compliance, in the absence of any such evidence, it is clear that Defendants simply

could not use Plaintiffs' tips to offset their minimum wage obligations under the FLSA.

Plaintiffs are therefore entitled to summary judgment on their minimum wage claims.

## III.  DEFENDANTS FAILED TO PROPERLY CALCULATE AND PAY THE OVERTIME WAGES OWED TO PLAINTIFFS

Defendants failed to properly calculate and pay Plaintiffs the legally appropriate wage for

the time they worked in excess of forty hours per week.  Under Section 7 of the FLSA, "no

employer shall employ any of his employees . . . for a workweek longer than forty hours unless

such employee receives compensation for his employment in excess of the hours above specified

at a rate not less than one and one-half times the regular rate at which he is employed."  29

U.S.C. § 207(a)(1).  According to the guidelines issued by the Department of Labor, an employer

must use the standard minimum wage of $7.25 per hour as the "regular rate" when calculating

overtime pay, not the lower base wage that it pays its employee after subtracting the tip credit.

U.S. Department of Labor, Fact Sheet #15: Tipped Employees Under the Fair Labor Standards

Act (Mar. 2011), *available at* http://www.dol.gov/whd/regs/compliance/whdfs15.pdf.

Further, while the employer may subsequently deduct a tip credit from this overtime

hourly wage, it may not "take a larger tip credit for an overtime hour than for a straight time hour

---

[14] As noted previously, *supra* n.12, Plaintiff dim sum sellers did not receive tips and were not subject to the tip credit.  Additionally, two Plaintiffs, Yu J. Lin and Jun Zhang, were unavailable to sign affidavits (Lin has been in China, and Zhang is out of state), despite the efforts of Plaintiffs' counsel.  However, because the burden is on Defendants to show that they informed Plaintiffs regarding the provisions of the tip credit, Plaintiffs' argument is unaffected.

(i.e., $4.00 tip credit per hour for the nonovertime hours and $5.12 tip credit per hour for overtime hours)."  *See id.*  Yet Defendants consistently paid Plaintiffs an overtime hourly wage that was one and one half times the reduced wage they received after Defendants claimed the tip credit, rather than the full minimum wage.  By deducting the tip credit before calculating the overtime wage, Defendants illegally multiplied the tip credit they were withholding from Plaintiffs, in turn reducing their overtime wage below what FLSA prescribes.[15]  Defendants consistently followed this policy in calculating the overtime wages for all the Plaintiffs. Therefore, even if Defendants were entitled to deduct the tip credit, they incorrectly calculated Plaintiffs' overtime pay and are liable for the shortfall.

---

[15] The pay records for Plaintiff  Xiu Y. Guo are instructive.  Defendants' own records indicate that the Restaurant paid Guo an hourly rate of $5.50, effectively deducting a tip credit of $1.75 per hour.  These records also show that the Restaurant paid Guo an overtime rate of $8.25—one and one half times his reduced wage of $5.50 per wage.  (*See, e.g.*, Rule 56.1 Stmt ¶ 52.)  Under the guidelines, however, Defendants actually owed Mr. Guo an overtime wage of $9.13 per hour, equal to one and one half times the full minimum wage of $7.25 ($10.875) less the tip credit of $1.75, meaning that he was shortchanged $0.88 for every hour of overtime worked.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment in favor of Plaintiffs, and hold that TYT and Jin Hua are each liable under the Fair Labor Standards Act and the New York Labor Law for failing to pay them the legally mandated minimum and overtime wages.

Dated:   New York, New York
        July 5, 2011

DAVIS POLK & WARDWELL LLP

By:   s/ Matthew B. Rowland
      Matthew B. Rowland
      Joshua T. Foust
      Benedict J. Schweigert
      Alan J. Tabak

450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000

ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND

      Kenneth Kimerling

99 Hudson Street
New York, New York 10013
Telephone:  (212) 966-5932

*Attorneys for Plaintiffs Guo Z. Wu, Tak S.
Cheng, Bi X. Yang, Mei F. He, Xiu Y. Guo, Jian
Z. Luo, Hui Lin, Yu J. Lin, Long Fang, Xiao H.
Zheng, Zhong Li, Jun Zhang, Ming Ho, Xiu H.
Jiang, Xiao Z. Zhang, Sky Wong, Wu C. Cao,
Shou F. Lam, Oy K. Kwan, Zhen Z. Wu, Shao J.
Ng, and Yan X. Lin*